In the Matter of the Application of MORRIS WEINFELD for an Order to Determine Any Question Arising in Respect to the Protested, Wholly Blank or Void Ballots Cast for the Office of Member of Assembly, Sixth Assembly District, New York County, at the General Election Held on November 7, 1922.

MORRIS WEINFELD (Democratic Candidate), Appellant, Respondent; SOL ULLMAN (Republican Candidate), Respondent, Appellant.

First Department, December 7, 1922.

Elections — proceeding to determine questions relating to protested, wholly blank and void ballots — Election Law of 1922, §§ 330 and 335, authorizes summary proceeding to determine legality of ballots rejected and to correct canvass on petition of party aggrieved — compliance with technical and formal requirements necessary to obtain mandamus order not required.

Sections 330 and 335 of the Election Law of 1922 provide a special proceeding to be instituted by any candidate aggrieved in which the Supreme Court or any justice thereof within the judicial district may summarily determine whether or not as a matter of law ballots rejected as void and protested were properly so rejected and if found to be as a matter of law improperly rejected, to correct the canvass based upon said illegal rejection.

The proceeding may be instituted by a verified petition and may be heard upon the petition and such oral or written proof as may be offered, and the petitioner is not required to conform to the technical and formal requirements necessary to obtain the ordinary statutory or common-law writ of mandamus as was the case in proceedings under section 381 of the Election Law of 1909.

The court at Special Term should have entertained this proceeding and should have opened and examined the envelopes containing the blank, void and protested ballots and should have determined upon the face thereof whether they were or were not legal ballots and should have corrected the canvass accordingly upon the affidavit presented which alleged that the petitioner was an unsuccessful candidate for election for the office of Member of Assembly, and which alleged the number of votes cast for each candidate and the number of blank, void and protested ballots, and that the petitioner verily believed, after an investiga-

tion, that many illegal ballots, which were duly protested, were counted for his opponent, the successful candidate, and many legal ballots which should have been counted for the petitioner were declared to be wholly blank and void.

FINCH, J., dissents in part, with memorandum.

CROSS-APPEALS from an order of the Supreme Court, made at the New York Special Term, dismissing in part and in part retaining a special proceeding brought under section 330 of the Election Law (Consol. Laws, chap. 17; Laws of 1922, chap. 588).

*George W. Olvany* [*John Godfrey Saxe* of counsel; *Isaac Ringel* with him on the brief], for Morris Weinfeld.

*Baker & Obermeier* [*Leonard J. Obermeier* of counsel], for Sol Ullman.

CLARKE, P. J.:

This proceeding was instituted by an order to show cause addressed to the board of elections and county board of canvassers of the city of New York, county clerk of New York county, and Sol Ullman and Samuel E. Beardsley, candidates for the office of Member of Assembly, sixth district, New York county, at the general election held November 7, 1922, to show cause at a Special Term of the Supreme Court why the justice of this court before whom this proceeding may be heard shall not determine such questions as may arise in respect to the protested, wholly blank and void ballots shown upon the statement of the canvass of each and every election district of the sixth Assembly district in the county of New York, and make such order as justice may require as to the recanvass or the correction of an error in the canvass of such ballots.

The affidavit of Morris Weinfeld, the applicant, states that at the general election held on November 7, 1922, he was the duly nominated candidate of the Democratic party for the office of Member of Assembly for the sixth Assembly district, and that his opponents were Sol Ullman, candidate of the Republican party, and Samuel E. Beardsley, candidate of the Socialist party and the Farmer-Labor party for such office; that said sixth Assembly district contains twenty-seven election districts; that the statements of the canvassers of said election districts show that said Ullman received 4,926 votes; that the applicant received 4,920 votes and that the said Beardsley received 3,293 votes; that it appeared from said statements of the canvassers that the said Ullman received a plurality of 6 votes. The affidavit further alleges that the said statements of the canvassers of the said Assembly district further state that of the ballots cast therein there were 415 blank and 173 void and protested, with a detailed

enumeration of the respective numbers in the several election districts; that the packages of void and protested and wholly blank ballots for each of the election districts have been duly filed in the office of the board of elections pursuant to sections 228 and 229 of the Election Law, as rewritten by chapter 588 of the Laws of 1922; that said packages containing the said ballots are now sealed and that he cannot obtain direct information as to their contents except pursuant to a court order; that he has caused a thorough investigation to be made by and from election workers and duly qualified watchers in each of the election districts and is informed by them and verily believes that many illegal ballots, which were duly protested, were counted for the said Ullman, and many legal ballots which should have been counted for the applicant were declared by the inspectors to be wholly blank or void ballots, and that upon a judicial examination of said ballots pursuant to section 330, subdivision 4, of the Election Law, as rewritten by chapter 588 of the Laws of 1922, the result would be changed and he would be held to have received a substantial plurality over said Ullman instead of the latter having a plurality of 6 votes over applicant. He further states that he is the candidate aggrieved and asks that the court make an order requiring the board of canvassers of the returns from each of said election districts and the board of inspectors of election of each of such districts to show cause why the Supreme Court should not determine any and all questions arising from the said protested, wholly blank or void ballots, and to make such order as justice may require. He submits six supporting affidavits. Sol Ullman submits his own affidavit and that of six election officers, each stating, in effect, the presence of the affiant at a designated election district of the sixth Assembly district during the whole time that the polls were open and until the completion of the canvass, and asserting that the count proceeded in an orderly and lawful manner; that the tally sheets show correctly the votes cast in that district, and explicitly and directly denying that any ballots which were improperly marked were counted for Sol Ullman, and that any ballots that were properly marked were not counted for Morris Weinfeld, and that the same are among the void ballots, but on the contrary that the ballots were properly and correctly counted and canvassed, and that the official return in duplicate made and executed by all the inspectors represents correctly and accurately the canvass of the votes made by the board; that the board of inspectors was unanimous in its decision as to the correct total of votes received by the various candidates for Member of Assembly; and that the determination or ruling of the said board is embodied in the official

returns heretofore filed in accordance with law and canvassed by the county board of canvassers.

Upon return of the order to show cause the respective parties, the board of elections and the county clerk, appeared and were represented by counsel, and the learned Special Term made an order providing that,

" Ordered, I, That this application is denied and this proceeding be and it hereby is dismissed, except to entertain the petition for the purpose of determining whether the alleged markings appearing on certain ballots in the Sixth Election District of the Sixth Assembly District were made before or after the ballots were opened."

Both parties appeal — the applicant from so much of the order as denied his application and Sol Ullman from so much as granted it.

It should be stated at the outset that we are unanimously of the opinion that, if the Election Law contained the same provisions as existed prior to the legislative session of 1922, we should hold that the affidavits would be entirely insufficient to warrant judicial action, and that we would be bound, under the opinion of the Court of Appeals in *Matter of Whitman, No. 1* (225 N. Y. 1), to deny the application and dismiss the proceedings. The court in that case had under consideration section 381 of the Election Law as it then existed, which provided as follows:

" If any statement of the result of the canvass in an election district shall show that any of the ballots counted at an election therein were protested or were canvassed as wholly blank or void, a writ of mandamus may, upon the application of any candidate voted for at such election in such district, within twenty days thereafter, issue out of the Supreme Court to the board or body of canvassers, if any, of the return of the inspectors of such election district, and otherwise to the inspectors of election making such statement, requiring a recanvass of such ballots. If the court shall, in the proceedings upon such writ, determine that any such ballot was improperly canvassed, it shall order the error to be corrected. Boards of inspectors of election districts, and boards of canvassers, shall continue in office for the purpose of such proceedings."

Of this section the Court of Appeals said: " Its purpose and scope are not obscure or doubtful. The courts must adhere to and cannot enlarge them. (*Matter of Tamney* v. *Atkins*, 209 N. Y. 202.) In no class of litigations is a strict and impartial adherence to the established rules of procedure and legal principles more essential or conservative of public quietude and respect for law than in the class in which is the case at bar. The electors of the several parties

and their candidates are justly and wisely sensitive to any departure of the courts from such adherence. The section empowers the court, under the requisite allegations in behalf of a candidate voted for at an election, and sufficient proofs, to require through a writ of mandamus the board of canvassers of the return of the inspectors of election to re-canvass, and correct the errors in the original canvass of, the protested or the void or the blank ballots."

Again that court said: " In enacting the section, the Legislature did not intend or contemplate, and the section does not enact, that the candidate, through his mere expressed wish, can move the court to act as a supervising or appellate canvasser of the protested, void or blank ballots, or to enter upon a judicial investigation of those ballots in order to ascertain, for any use or end, what result would ensue."

It further said: " ' The entire tendency of the courts is to require in affidavits which are to be made the basis of important orders and remedies the same kind of direct and legal statements of facts which would be required from a witness upon the stand, or where that cannot be had and statements based upon hearsay must be resorted to, a fortification of those statements by a clear recital of the information upon which they are based.' "

The court also held that " The writ of mandamus authorized by section 381 is the ordinary writ. * * * The Legislature did not, by the language of the section, invest it with unique or extraordinary characteristics. The ordinary and established rules and procedure, statutory, at common law and judicial, authorizing and regulating the issuance of a writ of mandamus are applicable to it. * * * The court can be moved only by allegations of the nature and quality essential, under the settled rules, on the part of an applicant for the issuance of the writ of mandamus as provided by the common law or by the Code of Civil Procedure."

With that authoritative decision before it, the Legislature rewrote chapter 17 of the Consolidated Laws, being the Election Law, by chapter 588 of the Laws of 1922, and in article 14 thereof, entitled " Judicial Proceedings," enacted as follows:

" § 330. Proceedings as to designations, nominations, ballots and canvass. The Supreme Court or any justice thereof within the judicial district shall determine any question arising, and make such order as justice may require, in respect of the following matters: * * *

" 4. Protested wholly blank or void ballots shown upon the statement of the canvass in the election district, or any rejected absentee voters' ballots for an election district, in a proceeding instituted by any candidate aggrieved, or the chairman of any

committee as defined in section two, against the board of canvassers, if any, of the returns from such district, and otherwise against the board of inspectors of election of such district, both of which boards shall continue in office for the purposes of this subdivision; and the court or justice may direct a recanvass, or the correction of an error in the canvass, of such ballots, but a proceeding under this subdivision must be instituted within twenty days of the election."

And section 335 provides:

" Procedure. A special proceeding under the foregoing provisions of this article shall be heard upon a verified petition and such oral or written proof as may be offered, and upon such notice to such officers, persons or committees as the court, justice or judge shall direct, and shall be summarily determined. The proceeding shall have preference over all other causes in all courts."

It will be noted that there is no provision for or mention of a writ of mandamus. A special proceeding is, therefore, provided for in which the Supreme Court or any justice thereof within the judicial district shall determine *any question* arising and make such order as justice may require in respect to *protested, wholly blank or void ballots shown upon the statement of the canvass in the election district*, in a proceeding instituted by any candidate aggrieved. Upon the statement of the canvass of the sixth Assembly district in the county of New York there are shown 415 blank and 173 void and protested ballots. These ballots under the Election Law were, in the several election districts by the election officers thereof, placed in sealed envelopes properly indorsed and filed with the board of elections which now has possession of them. The election was extremely close, a plurality of 6 having been declared for the respondent Ullman.

The determination of whether a ballot was void and properly protested or not is a legal question. In *People ex rel. Feeny* v. *Board of Canvassers* (156 N. Y. 36), which was an appeal from an order affirming an order awarding a peremptory writ of mandamus directed to the board of canvassers commanding them to exclude certain ballots and to include certain others which had been marked for identification or rejected as void, Judge GRAY said: " I have reached the conclusion that we cannot escape the onerous task of examining the ballots, which are in dispute in this proceeding. * * * I am unable to say that questions of law are not presented by this appeal." Judge HAIGHT (concurring) said: " It may be that a review by this court of alleged defective ballots cast in a closely contested election may consume so much time as

to seriously cripple the court and in a measure prevent it from transacting its regular business. But the remedy is with the Legislature and not with us."

Judge O'BRIEN said: " The case presents no question of fact whatever. * * * The question that we have to deal with is whether the ballots which have been sent here with the record are such as may be counted within the terms of the statute on that subject. That statute declares that when a ballot discloses certain marks or physical appearance it shall not be counted, and we have the ballots before us with certain marks and appearances upon them, and whether they come within the condemnation of the statute is a pure question of law."

In *People ex rel. Krulish* v. *Fornes* (175 N. Y. 119) Judge CULLEN said: " In *People ex rel. Feeny* v. *Board of Canvassers* (156 N. Y. 36) it was held that whether a ballot was so marked as to be void presented a question of law to be determined on the face of the ballot, and to that decision we adhere."

The courts of this State have often expressed their regret that the Legislature has thrown upon them the burden of passing upon election matters as unwise from a public and political aspect and as putting an unduly burdensome task upon judicial officers, and have suggested from time to time that the Legislature should relieve them of that burden, but without success. In view of the fact that from the time of the adoption of the official ballot provisions have been made for the separation and preservation of the blank, void and protested ballots; that prior to the legislative year of 1922 the law provided for the issuance of a writ of mandamus under which the ballots could be examined and if errors should be discovered the canvass could be corrected by order; that after the decision of the Court of Appeals in the *Whitman Case* (*supra*), which decided that to obtain such writ it was necessary to conform to the technical and formal requirements necessary to obtain the ordinary statutory or common-law writ of mandamus, the Legislature with that decision before it rewrote the Election Law and created an entirely new article known as " Judicial Proceedings " and provided that the Supreme Court or any specified justice shall determine any question arising in respect to protested, wholly blank or void ballots shown in the statement of the canvass, the majority of the court are of the opinion that the Legislature intended, in line with the general simplification of procedure illustrated by the new Civil Practice Act and the Rules of Civil Practice, to simplify this procedure and to permit a quick and summary determination of whether or not, as matter of law, ballots rejected as void and protested were properly so rejected or not, and if found to be as

matter of law improperly rejected, to correct the canvass based upon said illegal rejection.

We are, therefore, of the opinion that the order appealed from should be reversed, without costs, and that the matter should be remitted to the Special Term with the direction to open and examine the envelopes containing the blank, void and protested ballots and to determine upon the face thereof whether they were or were not legal ballots and, if determined that any of them were, to direct a correction of the canvass accordingly.

DOWLING, MERRELL and GREENBAUM, JJ., concur; FINCH, J., dissents in part.

FINCH, J. (dissenting in part):

I am unable to agree with that part of the decision holding that the mere fact of the existence of blank, void and protested ballots affords an opportunity to have the court review all of such ballots. As a practical matter, such ballots exist in every election district in the State, and the decision means that whenever the result is at all close, it may not be certainly known for some time, and upon the court is thrown the burden of becoming an " appellate canvasser of the protested, void or blank ballots, or to enter upon a judicial investigation of those ballots in order to ascertain, for any use or end, what result will ensue." (*Matter of Whitman, No. 1,* 225 N. Y. 1, 8.) The only limit to this is when the plurality is so large that it greatly exceeds the number of void, blank and protested ballots. If memory serves, without opportunity to check figures, very many elections have been decided in this State by pluralities much less than the number of void, blank and protested ballots. There will always be those whose time is worth so little that they will be willing to risk the speculation of everything to gain and nothing to lose involved in such an examination. The time of the courts, however, belongs to the public and should not be invoked, and I do not believe it can be invoked, except upon facts duly showing that an illegality has been committed or grievance exists. "A suitor to the courts must present a grievance in the contemplation of the law and the facts from which it arises." (*Matter of Whitman, supra.*) No matter how quick and summary a determination is provided, it nevertheless must be initiated in accordance with the fundamental principle that proceedings in the courts can only arise upon the presentation of facts duly verified and showing that a grievance exists. In the case at bar this can only be said of one election district.

It seems to me that there is nothing in the legislative enactment

which does away with this fundamental principle, but, on the contrary, the statute is predicated upon its existence. It is important that judicial investigations should not interfere, except upon proper facts duly verified, with the results of an election being speedily and certainly known.

It follows that in so far as the order appealed from dismisses the proceeding, it should be affirmed. In other respects I concur with the majority of the court.

Order reversed, without costs, and the matter remitted to the Special Term for further action in accordance with opinion.