In the Matter of the Application of JAMES J. BARRETT, Appellant, for the Examination of Voting Machines and Absentee Ballots, Pursuant to the Provisions of Section 333 of the Election Law. CHARLES G. HANNA and Others, Respondents.

Fourth Department, May 7, 1924.

Elections — proceeding to examine voting machines and absentee ballots pursuant to Election Law of 1922, § 333 — official canvass not completed when proceedings were begun — remedy may be invoked under § 333 though quo warranto not contemplated — petitioner not limited to proceeding under Election Law of 1922, § 266 — petitioner's motion should be denied as matter of discretion if, since proceeding was begun, examination has been had under said § 266 or under § 273.

Proceedings to examine voting machines and absentee ballots instituted by a candidate for office under section 333 of the Election Law of 1922, prior to the completion of the official canvass, are authorized, though the petitioner does not

contemplate the institution of an action in the nature of *quo warranto* to test the title to office.

A candidate for office is not limited in an examination of voting machines to a proceeding instituted under section 266 of the Election Law of 1922, which relates to the recanvass of the vote registered upon voting machines, but may proceed under section 333 of the Election Law of 1922, and in the discretion of the court may be allowed the relief asked.

If, during the period between the institution of the present proceeding and the determination on appeal, an examination of the voting machines has been had under section 266 of the Election Law of 1922, or under section 273 thereof, a further examination under section 333 should be denied as a matter of discretion.

APPEAL by the petitioner, James J. Barrett, from an order of the Supreme Court, made at the Onondaga Special Term and entered in the office of the clerk of the county of Onondaga on the 10th day of December, 1923, denying his application for permission to examine voting machines and absentee ballots, pursuant to section 333 of the Election Law of 1922.

*Irving H. Lessen,* for the appellant.

*Ray B. Smith,* for the respondent Charles G. Hanna.

*Nathan Abelson,* for the respondent Alexander S. Carlson.

*Edmund H. Lewis,* for the respondent Republican County Committee.

SEARS, J.:

There is involved in this appeal the construction of section 333 of the Election Law of 1922 which reads as follows: " The Supreme Court or a justice thereof may direct the examination by any candidate or his agent of any ballot or voting machine upon which his name appeared, and the preservation of any ballots in view of a prospective contest, upon such conditions as may be proper."

At the general election of November 6, 1923, the petitioner James J. Barrett was the candidate of the Democratic party for the office of president of the common council of the city of Syracuse, and Charles G. Hanna was the candidate of the Republican party. At the time of the beginning of the proceeding, the official canvass of the votes cast for such office had not been completed but the petitioner alleges in his petition that the unofficial returns indicated that the petitioner received 26,166 votes and that Charles G. Hanna received 26,208 votes, giving to Hanna a plurality of 42 votes. The petitioner questioned the accuracy of these figures and asked for an order pursuant to the provisions of section 333 of the Election Law of 1922 for an examination of the voting machines which had been used in all the election districts of the city and the absentee ballots, upon which his name appeared as a candidate at such election for the office mentioned. As

reasons for questioning the accuracy of the figures, irregularities were complained of in 37 of the 126 election districts of the city. These irregularities may be summarized as follows:

1. That there are more blank ballots for the office in question than the petitioner thinks were actually cast.

2. That the official returns differ in certain instances from those published in the daily papers.

3. That certain returns are written in pencil rather than ink.

4. That absentee ballots in one district were not properly distributed.

5. That the inspectors in one district made arbitrary additions to the vote of both candidates, equal in number to each candidate.

6. That in certain of the districts the total number of votes cast for the office of president of the common council is not given.

7. That certain returns are not properly certified.

8. That discrepancies exist in certain districts between the returns filed with the board of canvassers, the city clerk and the police department.

9. That the figures in certain returns are illegible.

The learned justice presiding at Special Term before whom this matter was heard, denied the petitioner's application on the ground that the remedy provided under section 266 of the Election Law of 1922 was exclusive unless the application under section 333 was made by some candidate who was about to commence or had commenced an action in the nature of a *quo warranto*, and that no action or proceeding to try the title to the office was pending, nor was the petitioner in position to commence such an action, for such an action would have to be brought in the name of the People with the consent of the Attorney-General, which was not shown to have been obtained. The learned justice also stated in his opinion that even if section 333 gave the court power in its discretion to order such an examination, the irregularities complained of were insufficient as matter of law to warrant the exercise of such discretion favorably to the petitioner's prayer. (121 Misc. Rep. 735.)

Section 333 of the Election Law received its present form in the Election Law of 1922. (Consol. Laws, chap. 17; Laws of 1922, chap. 588.) It was by that enactment that the section was first made applicable to voting machines. The principal source of the section, so far as we are concerned here, was the last sentence of section 374 of the Election Law of 1909 (Consol. Laws, chap. 17; Laws of 1909, chap. 22), as amended by chapter 821 of the Laws of 1913, which, after such amendment, read as follows: " Any candidate shall be entitled as of right to an examination in person or by authorized agents of any ballots upon which his name law-

fully appeared as that of a candidate; but the court shall prescribe such conditions as of notice to other candidates or otherwise as it shall deem necessary and proper." (See, also, Laws of 1916, chaps. 31, 537, amdg. said § 374.)

Before the revision of the Election Law in 1913, the pertinent provision in section 374, enacted by chapter 22 of the Laws of 1909, was as follows: "They [ballot boxes] shall be preserved inviolate for six months after such election, and may be opened and their contents examined upon the order of the Supreme Court or a justice ·thereof, or a county judge of such county, and at the expiration of such time the ballots may be disposed of in the discretion of the officer or board having charge of them." This sentence of section 374 of the Election Law of 1909 was taken *verbatim* from the last sentence of section 111 of the previous Election Law (Gen. Laws, chap. 6; Laws of 1896, chap. 909). Thus, it will be seen that the privilege of examining the ballots, which was subject to the court's discretion previous to 1913, was given as a matter of right to candidates in that year and so remained until it was again made dependent on the court's discretion by the Election Law of 1922.

The examination of the ballots provided for in all these enactments was not a step in a re-canvass of the ballots but was for the purpose of furnishing to a candidate the best existing evidence of the actual vote at the election which might be available for use in subsequent legal proceedings. For this reason in *Matter of Whitman, No. 2* (225 N. Y. 21), it was held that the court might properly postpone the examination of the ballots under section 374, as amended in 1913 and 1916, until after the canvass of all ballots had been completed, although the examination itself was recognized to be a matter of right.

The scope of the relief authorized by section 374, as amended in 1913, was considered in *Matter of Quinn* (220 N. Y. 623), which was a proceeding brought by a candidate for election to office in the town of Granville for an inspection of the ballots upon which his name lawful'y appeared, and the court said: "the order should be affirmed under the provisions of section 374 of the Election Law, which is broad enough in its terms to entitle any candidate voted for at the time of a general election to an examination as of right in a proper case of any ballots upon which his name lawfully appears as that of a candidate whether the validity of the election is in controversy or not." And in *Matter of Whitman* (185 App. Div. 228) Mr. Justice Shearn, writing for the Appellate Division, said, in construing the same section, as amended in 1913 and 1916: "I do not go so far as to say that if it appeared to the court that the inspection were sought for an improper pur-

pose, say to settle a wager on the plurality, or that if it had no legitimate purpose whatever, the application might not be denied, for the court does not act in a ministerial capacity in making such an order; its judgment must be satisfied. That the purpose is a proper one sufficiently appears in this case, for it is shown that the margin of difference between the two leading candidates, while substantial, represents but a fraction of one per cent of the total vote, and the petitioner indicates an intention to contest the title to the office if his information as to errors in the count is borne out by the inspection of the ballots." (See, also, *Matter of Whitman, No. 1*, 225 N. Y. 1.)

As to the examination of paper ballots, the enactment of section 333 in the Election Law of 1922 made no substantial change in the relief authorized in former section 374, which it replaced, except to make the examination which was previously a matter of right thereafter a matter of discretion.

By including voting machines in the same category as ballots in section 333, the Legislature must be deemed to have authorized an examination of machines in the same cases in which it has otherwise authorized an examination of the contents of the ballot boxes.

The court was not without power to order the examination unless some limiting provision is elsewhere contained in the statute. Our attention is called to section 266. That section relates to a recanvass of the vote registered upon voting machines. Under it the county board of canvassers may act of its own motion without judicial instruction or interference. (*Matter of Smith* v. *Board of Canvassers*, 92 Misc. Rep. 607.) Or a candidate may bring a mandamus proceeding to compel the public officers in a proper case to act as therein provided. (*Matter of Smith* v. *Wenzel*, 216 N. Y. 421.) These cases were decided under former section 416 of the Election Law of 1909, which, as amended by chapter 537 of the Laws of 1916, is the antecedent of section 266 of the Election Law of 1922. Under the terms of section 266, the counter compartments of the voting machines may be opened and the vote recanvassed thereon, and, in some cases, the voting and counting mechanism even may be unlocked and the machine thoroughly examined and tested. But, throughout the section, a discrepancy in the returns is specified as the condition precedent to the application of its provisions, and it is such discrepancy which the section offers means to remove so that the final canvass may be correct. In *Matter of Smith* v. *Wenzel* (*supra*) the return failed to show the total number of votes as shown on the public counter of the voting machine. If the total number had been certified the court states that it would have appeared that the return showed more votes for the office of mayor than

there were voters, and, therefore, the court held that a discrepancy was shown and that the relief provided for in the statute might properly be invoked in order that the return might be corrected. The procedure under section 266 bears some analogy in this respect to that provided for by section 273, relating to the canvass of election district returns of general and special elections. The word "discrepancy" usually means inconsistency, disagreement, variance. A discrepancy exists where different parts of the same instrument or different instruments are in conflict with one another. It is a word of narrower content than " error " or " irregularity." But whether, in construing section 266, it is given its usual meaning or construed as synonymous with "error" and "irregularity" (*Matter of Smith* v. *Board of Canvassers, supra*), the provisions of the section are all directed toward obtaining consistency in the returns. They do not look to a recount of the vote, and their primary purpose is not to afford a candidate information as to the actual result of the election or to furnish evidence for use in a subsequent proceeding to try the title to the office.

We fully agree with the statements contained in the opinion of the learned justice writing for the Special Term that the Legislature has carefully provided for accurate and speedy returns of election results and that the courts should be slow in opening ballot boxes or voting machines for an idle examination of matters satisfactorily covered by the returns. We cannot agree, however, that section 333 is either surplusage or applicable only in cases where an action in the nature of a *quo warranto* has been commenced or is about to be commenced. In our opinion it broadly authorizes the relief specified in all proper cases in the discretion of the court.

Nor do we think that the motion should have been denied as matter of discretion on the mere ground that the petitioner had power to proceed under section 266. The examination under section 333 may be postponed until after the complete canvass of the votes (*Matter of Whitman, No. 2, supra*) and an actual inspection under section 266 may render an examination under section 333 unnecessary. Nevertheless, the purpose of the examinations provided for under the two sections is different.

Several months have passed since this matter was decided at Special Term. The record before us, of course, does not show what has been done in the interval. All of the irregularities and omissions to which the moving papers call attention may have been corrected and supplied by a recanvass under the provisions of section 266 or even on the canvass by the canvassing board under section 273. If, therefore, in the meantime there has been an examination of the machines, a further examination under

section 333 would be futile, and in such case the petitioner's application ought to be denied as matter of discretion.

The order appealed from should, therefore, be reversed and the matter remitted to the Special Term for the parties to take such further action as they may be advised.

All concur.

Order reversed, with ten dollars costs and disbursements, and matter remitted to the Special Term for the parties to take such further action as they may be advised.