In the Matter of the Application of CORTLAND A. WILBER, Petitioner, for an Examination of Voting Machines and Absentee Ballots Pursuant to the Provisions of Section 333 of the Election Law.

Supreme Court, Broome County, December 22, 1927.

**Elections — voting machines — application for examination of all voting machines used at general election, pursuant to Election Law, § 333 — petitioner entitled to examination where claim is made that inspectors failed to verify figures taken from back of voting machines as required by Election Law, § 262 — provisions of Election Law, § 333, making granting of relief discretionary, should not be strictly construed — decision limited to this case.**

Petitioner, a candidate for mayor at the general election held in the city of Binghamton on November 8, 1927, is entitled to the examination of all the voting machines used at said election, where it appears that in a great number of election districts in said city the inspectors after taking the result as shown by the counter numbers from the back of the machines and entering it on the statement of canvass, failed to recheck said numbers to see if they were correct as required by section 262 of the Election Law. To disregard the provisions of the statute not only violates the letter of the law but its spirit and intent as well by making possible the very errors which the law intends to correct.

Section 333 of the Election Law, making the granting of the relief discretionary, substituted a discretionary privilege for what, under former section 374 of the

Election Law was an absolute right, and the statute should not be strictly construed so as not to allow an examination except upon strict proof of facts making it imperative that the order be granted. The discretion should be exercised reasonably with due regard to all the facts as might best serve the public.

Nor should relief be denied on the ground that petitioner has an adequate remedy under section 266 of the Election Law, since that section only applies where there is a discrepancy in the returns; section 333 of the Election Law is broader in its scope and can be invoked in cases of irregularities as well as discrepancies.

This decision is limited to the facts of the case. It is not intended to serve as a precedent for frequent recounts and opening of voting machines.

MOTION by petitioner for an order permitting the examination of voting machines pursuant to section 333 of the Election Law.

*David F. Lee*, for the petitioner.

*Ryan & Heffern*, for Robert Coddington, county clerk of Broome county, as election commissioner.

*James T. Rogers*, for the respondent Norman A. Boyd.

*Edmund B. Jenks* and *B. Roger Wales*, for the Republican Committee of Broome county.

SENN, J. At the general election held in the city of Binghamton on November 8, 1927, Cortland A. Wilber, the petitioner, was the Democratic candidate and the respondent, Norman A. Boyd, was the Republican candidate for mayor.

On the face of the returns Mr. Boyd was elected by a majority of 165, he receiving 10,850 votes and Mr. Wilber 10,685.

Voting machines were used in all of the forty-two election districts, the whole number of machines used being forty-nine.

Soon after the election certain discrepancies in the returns of some of the districts were claimed on the part of Mr. Wilber's supporters and after some negotiations the county board of canvassers took action under section 266 of the Election Law which resulted in five of the machines being opened on November 18, 1927, and such errors as were found were corrected. In these five machines, as nearly as I can ascertain, no errors were found which affected the result of the mayoralty election, but on the vote for Member of Assembly one machine showed an error of 100, that is, a vote of 245 which appeared on the return sheet as 345, and on another machine examined, the vote for associate judge of the Court of Appeals was 333 and had been returned as 313.

The petition alleges on information and belief that the number of votes credited to the petitioner in the returns of the inspectors of election did not accord with the number of votes cast for him. It does not specify just what vote he should have been credited

with in any district or in the city as a whole, but he contends that on account of the closeness of the vote and the small apparent majority of his opponent it is not improbable that an examination of all the machines may change the result. Many alleged errors, mistakes, inaccuracies and irregularities are set forth in the moving papers as grounds for the belief that the returns did not give the correct vote, such as the large number of blank votes returned, illegible and blurred figures in the returns, alterations and erasures in some cases, discrepancies between the official register of persons voting and the number shown by the machines to have voted, discrepancies between the number who voted as indicated by the protective numbers and the returned number, and many other irregularities and discrepancies not necessary to set forth here. Practically all of these have been satisfactorily explained by the answering affidavits.

It is also claimed that in some instances the voting levers stuck and failed to work, making it necessary to call in the custodians and mechanics to correct the trouble, resulting in delay which disfranchised some of the voters. I do not see how an examination of the machines would remedy this condition; nor would it throw any light on the claim that in some districts the election officer attending the machine did not, as required by law, inspect the face of the machine after each voter had voted.

The claim which has most impressed me is the allegation that in a great number of election districts, the inspectors, after taking the numbers on the return slips from the back of the machines, did not recheck them to see if they were correct as required by section 262 of the Election Law, which in part is as follows: " * * * The chairman of the board of inspectors shall, under the scrutiny of an inspector of a different political party, in the order of the offices as their titles are arranged on the machine, read and announce in distinct tones the designating number and letter on each counter for each candidate's name, the result as shown by the counter numbers * * *. The vote as registered shall be entered on the statements of canvass in ink, by two inspectors of opposite political faith from each other, but not including the chairman, in the same order on the space which has the same designating number and letter, after which the figures shall be verified by being called off in the same manner from the counters of the machine by an inspector of opposite political faith from the chairman. The return of the canvass shall then be filled out, which shall have the total number of votes cast for each office, the number of votes cast for each candidate," etc.

The provision for verifying the figures by being called off, that

is, called back by an inspector of the opposite political faith from the chairman, is very important. If it is faithfully carried out, the chances for error are reduced to a minimum. To disregard it violates not only the letter, but the spirit and intent of the law by making possible the very errors which the law intends to correct.

It is true that the allegations in this regard are general and made upon information and belief and that the sources of the information are not stated except as to three districts wherein inspectors made affidavit that the returns were not checked back and one witness who deposed that the returns were read off by a person other than an inspector. I cannot, of course, assume from this that there was the same omission to check back in the other districts.

However that may be, in view of the well-known fact that such omissions are common and that errors in reading and transcribing figures at such times easily occur and considering the closeness of the vote, I feel that the order asked should be granted.

Section 333 of the Election Law makes the granting of this relief discretionary. It supersedes former section 374 under which any candidate was entitled as of right to an order for the examination of any ballots upon which his name lawfully appeared as that of a candidate. In view of the fact that it substitutes a discretionary privilege for what was an absolute right I do not believe, as has been urged, that it should be so strictly construed as not to allow an examination except upon strict proof of facts which make it imperative that the order be granted, but rather that it was intended that the discretion allowed should be exercised, not arbitrarily or capriciously, but reasonably and with due regard to all the facts, as might best serve the public welfare. Under section 374 it was too easy to procure an examination of ballots; it should not on the other hand be made too difficult, but the order should be granted when it reasonably appears that errors, possibly affecting the result, have occurred. Considering the interests of the candidates and that of the public, it is of paramount importance, of greater import than any present incumbency can be, that he who takes the office shall hold it by a title not only unassailable in law, but unclouded by any just suspicion of error. I believe such a result will follow the re-reading of the records of the voting machines.

I have given very serious consideration to the suggestion that during the time the machines were stored in the basement of the Municipal Building and in other places where they were not locked in any room, they may have been tampered with in a way to affect the record of the vote. Inquiry and investigation has

Supreme Court, December, 1927.        [Vol. 131

satisfied me that this would be virtually impossible without detection.

The facts in *Matter of Barrett* (121 Misc. 735; 209 App. Div. 217) and one unreported opinion by Mr. Justice EDGCOMB were not as strong for the petitioner as in the case at bar, although it was stronger in the one particular that the returned majority in that case was much less than here, being only forty-two. But during the pendency of the appeal in that case the election board had, at the suggestion of Mr. Justice EDGCOMB, caused many of the machines to be opened, so that no further order was necessary.

I do not think the relief asked should be denied on the ground that an adequate remedy is afforded by section 266. That only applies where there is a discrepancy in the returns. Section 333 is broader in its scope and can be invoked in cases of irregularities as well as discrepancies.

Nothing herein is intended to cast any reflection on any election officer who officiated at the election in question. As far as disclosed by the record everyone acted intelligently and conscientiously. With the multitude of statutory prescriptions and inhibitions concerning the conduct of elections, the wonder is not that there are so many mistakes and inadvertent irregularities, but rather we may well marvel that there are so few. It is a matter of public congratulation that in this case no charge or even hint of bad faith has been heard. This decision is a mere recognition of the fallibility of all operations in which the human element is a factor; neither is it to serve as a precedent for frequent recounts and opening of voting machines. It should only apply to the facts of this case.

The relief asked should be granted. An order to that effect may be submitted.