In the Matter of the Application of JOSHUA H. FRIEDMAN and Another, Appellants, for an Order to Review the Action of the Inspectors of the Primary Election of the Election Districts Comprising the Fourteenth Assembly District of the State of New York, etc., Pursuant to the Election Law.

SIDNEY FISHBANE and Others, Respondents.

Second Department, April 26, 1933.

*Jay Leo Rothschild* [*Walter S. Beck* with him on the brief], for the appellants.

*James J. McLoughlin* [*Peter P. Smith* with him on the brief], for the respondents.

DAVIS, J. At the primary election held on April 5, 1932, there were three sets of candidates for party positions, to wit, members of the State committee of the Democratic party for the fourteenth Assembly district of Kings county. The vote for the third set was inconsiderable and may be disregarded. The " regular " candidates, Joseph Lentol and Nora Quinn, received, respectively, 4,297 and 4,243 votes, while the opposing candidates, Joshua H. Friedman and Ethel Walsh, received, respectively, 3,949 and 3,884 votes, as the canvass showed, in the twenty-one election districts. This gave to Lentol and Quinn pluralities of 348 and 359 respectively. On the face of the returns, the election may not be deemed close.

The petitioners, in contesting the election of the apparently successful candidates by asking for a recanvass and correction of errors in the canvass of votes, say that the election was characterized by gross frauds, irregularities and misconduct; that the provisions of the Election Law were flouted and disregarded, not only by the successful candidates and their adherents, but by the election officers as well, who acted in concert with them and took directions from them in the pursuit of a common purpose to see that Lentol and Quinn were elected at all hazards. This concerted plan, it is said, involved not only the count and canvass of the votes, but a general scheme to prevent voting by those espousing the cause of Friedman and Walsh, by methods of delay, violence and intimidation, whereby voters were driven away from the polls or otherwise interfered with in casting their ballots.

The petitioners have in mind three forms of relief furnished by the law: (1) As already stated, the recanvass of the vote by an examination of protested, void or blank ballots; (2) an examination of all ballots for a prospective contest contemplated by them; (3) a new election in case other forms of relief fail.

Addressing our attention to the first form of relief asked, it appears on the face of the returns first made by the inspectors that the number of blank ballots was 248 and that 701 of those cast were declared void. This did not account for the 9,187 ballots cast, so the inspectors were called before the board of elections to correct their tally sheets. After such correction the tally stood, blank 946, void 900. On its face this presents an unusually large number of faulty ballots where there was a spirited contest, with the voters earnestly striving to elect the candidates of their choice.

The Election Law directs (§ 226) that the inspectors shall inclose the protested, void and wholly blank ballots in a separate sealed package and indorse thereon a proper certificate. The purpose of this statute is clear. If there is doubt in respect to the proper count or as to the candidate elected in respect to what may be shown by an examination of such ballots, the court may summarily direct a recanvass of these ballots or the correction of errors to the end that candidates duly elected shall not be deprived of their offices through error, mistake or fraud on the part of election officers by declaring a valid ballot void or one blank which has in fact been marked. (Election Law, § 330, subds. 2 and 4, as amd. by Laws of 1924, chap. 405, and Laws of 1926, chap. 237; *Matter of Weinfeld*, 203 App. Div. 778.) The procedure regulated by section 335 of the Election Law has been followed here.

It would ordinarily be a simple matter, therefore, for the court to examine these questioned ballots and determine whether or not from these 1,846 ballots it appeared that the contesting candidates had received sufficient votes to overcome the stated plurality against them. But it is not simple, for the reason that, without dispute, in many of the districts the election officials did not obey the mandate of the law by placing these ballots in separate sealed envelopes, but, instead, dumped them into the boxes with those counted as valid, where they are commingled and incapable of being separated without an examination of all the ballots. Whether this was done by design or through ignorance and stupidity does not greatly matter in its effect of depriving the petitioners of their legal rights. It prevents summary action on the part of the court in directing in full a recanvass of these ballots which have been determined by the inspectors to be void and blank. These unlawful acts give credence to some extent to the charges of fraud and other misconduct.

The second form of relief asked by the petitioners is the examination and preservation of ballots given by section 333 of the Election Law. This can have no effect on the recanvass or the immediate determination of the result of the election in the form of a recount. (*Matter of Medbury*, 234 App. Div. 26.) It is given " in view of a prospective contest " which petitioners say they have in mind. It is intended, we think, to permit a defeated candidate to determine whether he has any grounds for a contest, and to prepare and marshal his evidence in case he ascertains that he has been defeated by an incorrect or fraudulent count. (*Matter of Barrett*, 209 App. Div. 217.) In view of former decisions which practically denied a contesting candidate any practical relief as the law then stood, the Legislature in 1922 enacted the legislation now in effect, liberalizing the law and making the remedy simpler. The granting of an examination is a matter of discretion which should be reasonably exercised both to prevent examinations by a disgruntled candidate who presents insufficient facts, and to give relief in meritorious cases. (*Matter of Barrett, supra; Matter of Dolen*, 225 App. Div. 78; *Matter of Wilber*, 131 Misc. 2.)

On the part of the petitioners the charges of fraud, violence, mutilation of ballots and other misconduct by election officials and the supporters of Lentol (the leader) are supported by the affidavits of sixty-four persons present at the election — of whom forty-four were watchers and twenty were voters. Of these, five are attorneys who, it is assumed, were familiar with the provisions of the Election Law and who will speak truthfully concerning what they observed. We will not go into detail in relation to the charges. It is a sordid story. The charges of delay, assault and intimidation do not, of course, affect the count of the ballots actually cast, but they shed light on the other charges of fraud and error in counting and tallying. They may justify a new election. (Election Law, § 330, subd. 2.)

There are denials of these " irregularities " by some of the election officers, who assert their high rectitude and virtue; and by some others. In part there is what they call a " refutation " and in part there is silence as to acts charged, particularly in respect to the return of void and blank ballots. We are convinced by the proof offered that there is great doubt of a free choice by a free electorate of the candidates for party position and of an honest count such as our scheme of representative government contemplates. Nor are the tactics and methods employed to obtain a given result at all unusual if we accept the common knowledge that many inspectors of election have been indicted for fraud and misconduct at the last general election, and already some of them

have been convicted. It is perhaps well that election officials should be awakened to a sense of their legal and moral duties and obligations, and that candidates should learn that no permanent advantage can be gained by an election conducted by trickery and fraud, defeating the will of a majority of voters. The petitioners have shown facts sufficiently strong so that they are entitled, in part at least, to the relief they seek. The recanvass and examination will, in a measure, determine whether or not the charges made are substantial. If the denials on the part of the respondents are true, they should welcome this opportunity to acquit themselves of the serious charges made against them.

The relief sought by recanvass and examination may definitely determine the matter one way or another, so the question of a new election may be held in abeyance.

The order should be reversed on the law and the facts, with ten dollars costs and disbursements, and the matter remitted to the Special Term with directions to proceed under such terms and conditions as may be properly imposed, to recanvass such void, protested and blank ballots as may be found either in separate envelopes or otherwise segregated in the ballot boxes and make correction of any error in the canvass of such ballots; to give the petitioners examination of all ballots contained in the boxes of the fourteenth Assembly district, and to provide for the preservation thereof; and to retain jurisdiction and hold in abeyance that part of the petition asking for a new election until the completion of the recanvass and examination, when a re-election may be granted or denied in the exercise of sound discretion.

LAZANSKY, P. J., YOUNG and TOMPKINS, JJ., concur; HAGARTY, J., not voting.

Order denying the prayer of the petition, dismissing the proceeding, vacating the stay and directing that a certificate of election issue reversed on the law and the facts, with ten dollars costs and disbursements, and the matter remitted to the Special Term with directions to proceed under such terms and conditions as may be properly imposed, to recanvass such void, protested and blank ballots as may be found either in separate envelopes or otherwise segregated in the ballot boxes, and make correction of any error in the canvass of such ballots; to give the petitioners examination of all ballots contained in the boxes of the fourteenth Assembly district, and to provide for the preservation thereof; and to retain jurisdiction and hold in abeyance that part of the petition asking for a new election until the completion of the recanvass and examination, when a re-election may be granted or denied in the exercise of sound discretion.