In the Matter of the Application of JOSHUA H. FRIEDMAN and Another, Respondents, for an Order to Review the Action of the Inspectors of the Primary Election of the Election Districts Comprising the Fourteenth Assembly District of the County of Kings in the City of New York, etc., Pursuant to the Election Law. JOSEPH LENTOL and Another, Appellants.

Second Department, October 20, 1933.

*James J. McLoughlin* [*Robert L. Callahan* and *Hyman Barshay* with him on the brief], for the appellants.

*Jay Leo Rothschild* [*Walter S. Beck* with him on the brief], for the respondents.

PER CURIAM. The parties have not followed the procedure directed by this court. Instead of one justice disposing of the entire matter, it has been before four justices, and before the election board.

The main contention of petitioners was that there were 1,846 void, protested and blank ballots, of which only 379 in separate envelopes were accounted for, and there were thus missing and unaccounted for 1,467 ballots; or if, as claimed by respondents, there were only 923 void, protested and blank ballots, there were missing and unaccounted for 544 ballots. In either event there would be presented a serious situation.

It is conceded that 9,187 ballots were used. It must be borne in mind that each voter was permitted to vote for two persons. In some cases it may have been that there was a vote for one only, and thus there would be a blank vote for the other. In some cases the ballot may have been entirely blank. A void ballot would mean two void votes. The aggregate number of all the votes — valid, invalid and blank — must be divided by two (Election Law, § 217, subd. 2) to ascertain the number of ballots.

The original statement filed by the inspectors shows that there was a total vote for all candidates and blank and void ballots of 18,374; dividing this by two shows total ballots conceded, 9,187. In the same way, in determining the number of void, protested and blank ballots, the number of such votes must be divided by two. This shows that there were 923 of such ballots. If the contention that there were 1,846 void, protested and blank ballots were sound, this would be the result: The summary statement showed 16,528 votes cast for candidates. Dividing this amount by two, under the Election Law, shows: Ballots validly used, 8,264. If there were void, protested and blank ballots, 1,846, there would have been used 10,110 ballots. This would be 923 over the number concededly used.

Although this court directed a recanvass only of void, protested and blank ballots in separate envelopes, or otherwise segregated in the ballot boxes, the parties undertook a recount of all the ballots. An order was made that the officials of the board of elections should " segregate any ballot or ballots (wherever found and counted at the time of the said primary election as valid ballots), the validity of any of which is challenged by petitioners and respondents, so that they may be submitted to the court for its

consideration and aid in determining petitioners' request for an order directing a new election." No appeal was taken from this order.

Upon this basis the parties proceeded before the election board to open the ballot boxes, and agreed that 8,133 ballots were valid.

At their instance there were removed from the ballot boxes 695 ballots, challenged by either side. How many of these ballots were votes for respondent and how many were votes for petitioner does not appear. These 695 ballots were brought before Mr. Justice CROPSEY, who made a determination as to those which were valid and those which were invalid. The 379 ballots in the separate envelopes were then passed upon by Mr. Justice CROPSEY. How many of these had been voted for petitioner and how many for respondent does not appear. Mr. Justice CROPSEY declared some of these ballots valid for petitioner and some for respondent, and the balance was declared invalid.

It thus clearly appears from the procedure adopted by the parties, and by their determination and that of the court, that there were

Ballots in the ballot boxes agreed upon by the parties as valid........................................... 8,133

Taken from the ballot boxes and passed upon by Mr. Justice CROPSEY........................................ 695

In separate envelopes, and passed upon by Mr. Justice CROPSEY........................................ 379
                                                          ——————
    Total ballots.................................. 9,207

This is twenty more than the recorded number of ballots. Whether this was due to an error in the count of the ballots in the boxes, or, as stated on the motion for reargument, because there were twenty-three mutilated ballots, is not satisfactorily explained. However, it does clearly appear that there were no missing ballots.

Some of these figures are taken from the papers on the motion for reargument, which was denied, but they are not disputed.

Although this court did not so direct, there has been a recount of all the ballots, with the result that, instead of a plurality of 348, respondent has a plurality of 283 votes.

That 546 of the void, blank and protested ballots were in the ballot boxes, intermingled with the voted ballots, was a gross irregularity, due either to carelessness or indifference to procedure. But the parties have adopted a course by which they have made or caused to be made a determination of these ballots, whether they were among the 8,133 agreed to be valid, or the 695 taken from the ballot boxes and passed upon by Mr. Justice CROPSEY.

No oral proof was presented of alleged misconduct at the polls. The determination of Mr. Justice STEINBRINK, who made the order

from which the appeal is taken, was made upon the basis of irregularity in the count. The action of the parties has demonstrated that the irregularity had no effect upon the net result.

It is impossible from this record to determine whether or not error was committed by Mr. Justice Cropsey in his determination as to the validity or invalidity of the ballots taken from the ballot boxes and those which had been in the envelopes. It is, however, a judicial determination of the action of the inspectors, which, as far as this record shows, eliminates the charges of willful wrongdoing in respect of the count of the ballots, which was the gravamen of petitioner's complaint.

Under the circumstances, there is no necessity for a new primary election.

The order granting a new primary election should be reversed on the law and the facts, and the motion denied. The appeal from the order denying the motion for reargument should be dismissed.

Lazansky, P. J., Young, Scudder and Tompkins, JJ., concur; Davis, J., in memorandum, dissents and votes to reverse and remit the matter to Special Term for a further hearing.

Davis, J. (dissenting). I agree that the court at Special Term did not follow the instructions given in remitting this matter for a hearing. The proceedings on the recount and in respect to the ordering of a new primary election were entirely irregular and no definite result was obtained. We said on the former appeal (238 App. Div. 341, 344): " We are convinced by the proof offered that there is great doubt of a free choice by a free electorate of the candidates for party position and of an honest count such as our scheme of representative government contemplates." The record on that appeal showed acts of violence, intimidation and fraud whereby voters were prevented from exercising the right to vote, as well as apparent fraud in the count. That there was inaccuracy or fraud in the count is now indicated by the increase in the Friedman vote even as irregularly recanvassed. The question as to whether there was fraud, violence and intimidation of voters in the election is one that has not been decided; and the petitioners have the right to have it determined, regardless of the irregular procedure adopted. The public has an interest in fair, honest elections, which should not be defeated by the jugglery of procedure. Therefore, I vote to reverse and remit the matter to Special Term for a further hearing, so that the rights of the petitioners may be preserved and the interests of the public served.

Order granting a new primary election reversed on the law and the facts, and motion denied. The appeal from the order denying the motion for reargument is dismissed.