Frank Del Vecchio, J.
This is a proceeding pursuant to the provisons of section 330 et seq. of the Election Law for the examination of the voting machines and review of the canvass of votes for write-in candidates on the paper rolls pertaining to the election for the office of supervisor of the Town of Spafford. The petitioner was a write-in candidate for that office.
The first column of the voting machines was designated for the office of District Attorney, the second for supervisor and the third for town clerk. In Bow A the name of the Republican candidate for supervisor, George C. Tallcott, appeared in the second column adjacent to a separate key which had to he used in order to vote for him. In Bow B the name of the Democratic candidate for supervisor, Leonard Burns, appeared in the second column adjacent to a separate key which had to he used in order to vote for him.
In accordance with the provisions of the Election Law, a row of single receptacles or slots, covering a paper roll, was *806 located above Bow A with numbers under each slot corresponding to the column in which appeared the names of the nominated candidates. This row was to be used for write-in votes. The petitioner, Clair Bennett, was not a nominated candidate and his name did not appear on the machine. Therefore, in order to vote for him for the office of supervisor it was necessary for the electors to write his name in slot number “ 2 ”. This is clearly shown on a photograph of a portion of the voting machine circulated by the committee for Clair Bennett for supervisor with instructions that to vote for Bennett for supervisor the voter had to “ Push up slot two write in or print Clair Bennett ”.
The canvass by the inspectors of election and by the Board of Elections shows that George C. Tallcott received a total of 169 votes in the two election districts comprising the Town of Spafford.
The canvass by the inspectors shows that Clair Bennett received 168 votes by counting one absentee ballot and 167 write-in votes. The write-in votes for Bennett which appeared on the paper rolls were the following:
For Supervisor 167
For District Attorney 2
For Town clerk 3 (Second District).
In addition, 3 ballots were designated by the inspectors as illegible.
Upon the recanvass of the paper rolls by the Board of Elections Mr. Bennett received 167 votes as follows:
District One — Town of Spafford
Becanvass of Votes Cast on Paper Boll
Supervisor: Clair Bennett 65
Bennett 3
C. Bennet 1
Claire Bennet 1
Clair Bennet 6
Clare Bennett 2
Ciar Bennet 1
C. Bennett 1
Claire Bennett 1
Town Clerk: G. Talcott 1
Clair Benett 1
In District One the board also designated 1 ballot written in slot 2 as illegible.
*807 District Two — Town of Spafford
Recanvass of Votes Cast on Paper Roll
District Attorney:
Clair Bennett 2
Supervisor: Clair Bennett 73
Clair Benett 1
Clare Bennett 1
Clair Bennet 5
C. Bennett 4
Claire Bennett 1
Clair Bentt 1
Town Clerk: Clair Bennett 2 Same three electors also C. Bennett 1 wrote petitioner’s name in slot 2 for Supervisor
In District Two the board also designated 1 ballot written in slot 2 as illegible.
Although the canvass and recanvass show three votes in the second district for petitioner for the office of town clerk it is conceded that these cannot be counted for him for supervisor because the electors wrote his name in slot 2 as well as slot 3. These three votes in slot 2 were properly counted for him. (Matter of Fergeson, 126 Misc. 286.)
The final determination of the Board of Elections was that the two illegible votes, the two write-in votes for District Attorney and the one write-in vote for town clerk could not be counted for petitioner for the office of supervisor with the result that petitioner received a total of 168 votes represented by one absentee ballot and 167 write-in votes. The canvass does not contain any statement that the ballots not counted were protested, wholly blank or void.
Petitioner questions the determination of the Election Board and contends that the 2 votes declared by the board to be illegible are in truth and fact valid votes to be counted for him and desires to offer oral testimony of the electors to show that they wrote in the name of petitioner and intended it to be a vote for him for the office of supervisor.
He also contends that the voting machine was so constructed as to confuse and mislead the electors who intended to vote for him and desires to offer oral testimony of the electors to show that the 2 votes written in the slot for District Attorney and the 1 vote written in the slot for town clerk were also in fact intended to be votes for him for the office of supervisor and should be so counted for that office.
*808 Respondent Tallcott, on the other hand, takes the position that neither the illegible votes nor the votes written in the slots for District Attorney and town clerk may be counted for petitioner for the office of supervisor and that the clerk does not have the power and authority to take oral testimony to ascertain the intention of the electors who cast these votes.
He also contends that petitioner is not entitled to the 3 votes counted for him in which only the name “ Bennett ” appeared with no given name or initial, because there is a resident and elector of the Town of Spafford by the name of Bessie Bennett (petitioner’s wife), citing Matter of Slater (Village of Afton) (180 Misc. 798) and Matter of Garvin (168 App. Div. 218).
First, as to the 3 votes in which only the surname “ Bennett ” was written: It appears that petitioner has held the office of supervisor for 12 years, that he is the incumbent and the only write-in candidate for any office and that he has actively campaigned for the office of supervisor. In these circumstances, which were not present in the above cases, this court is of the opinion that these 3 votes were properly counted for petitioner.
Second, as to the votes written in the slots for District Attorney and town clerk: Section 259 of the Election Law is entitled “ Voting for person other than a nominated candidate” and provides in part: “ Ballots voted for any person whose name does not appear on the machine as a nominated candidate for office are referred to in this article as irregular ballots. Where two or more persons are to be elected to the same office, and each candidate’s name is placed upon or adjacent to a separate key or device, and the machine requires that all irregular ballots voted for that office be deposited, written or affixed in or upon a single receptacle or device, a voter may vote in or by such receptacle or device for one or more persons whose names do not appear upon the machine with or without the names of one or more persons whose names do so appear.” The last sentence of the section states that: '‘ An irregular ballot must be east in its appropriate place on the machine or it shall be void and not counted.”
Section 212 sets forth the rules for counting votes and rule 3 thereof provides: “A vote shall be counted for a person for an office or party position if his name is written by the voter upon the ballot in the proper place provided therefor and is not printed under the title of such office or position.” (Italics supplied.)
The courts in interpreting this section have held that the write-in of a candidate’s name cannot be counted when the *809 name is not written in the blank space provided therefor, and to write it elsewhere is a failure to express the voter’s intent in the manner provided by statute. (See Matter of Haskell v. Hannah, 188 Misc. 589; People ex rel. Brown v. Board of Supervisors, 170 App. Div. 364, mod. 216 N. Y. 732; Matter of Winchester, 123 Misc. 191.)
Petitioner strongly urges that People ex rel. Simons v. Knickerbocker (225 App. Div. 212, affd. 250 N. Y. 594) is good authority for taking oral testimony of electors to show that although they wrote petitioner’s name in the slot for District Attorney or town clerk they were confused and in fact intended to vote for petitioner for supervisor. In that case it was sought to remove the respondent from office because some of the electors had not cast their write-in ballots in the manner provided by statute. The court held that the votes were properly counted after finding that the voters had been misled and invited to make the mistake because the election officials had failed to prepare the form of the ballot as required by the statute. Here, however, the election officials did prepare the voting machine as required by statute and the mistake, if any, was that of the elector and not the election officials. The court has inspected the voting machine and finds that it was not confusing so as to mislead the electors, that the failure to make a vote count for supervisor was the fault of the elector (Matter of Houligan, 55 Misc. 5), and that the Board of Elections properly refused to count for supervisor the 3 votes written in slots other than the one provided therefor.
It should be noted that the electors were not disfranchised and that these ballots were not declared void, wholly blank or protested but were counted as they were cast — 2 for the office of District Attorney and 1 for town clerk.
In these circumstances the application of petitioner to offer oral testimony of the electors who cast these 3 votes to show for whom they intended to vote is denied.
Third, as to the 2 votes designated by the Board of Elections as ‘' illegible ’ ’: The court has examined the paper rolls and agrees with the board that these 2 votes are illegible and that it is impossible to determine the voter’s choice of a candidate therefrom. This again is due to the fault of the elector and not of the election officials.
It may be that the elector because of some physical disability was unable to write the name legibly enough so that his intention could be fairly ascertained from the ballot. Such disability however need not have disfranchised the voter; section 199 of *810 the Election Law provides among other things that a person entitled to vote may have assistance in voting if he is physically unable to prepare his ballot without aid.
The Legislature has prescribed clear and definite rules for the guidance of voters and they must manifest their intent to vote for a particular candidate in the mode prescribed by statute within the limits of settled canons (Matter of Hughes v. Harrer, 4 A D 2d 888) or their ballots cannot be counted. (People ex rel. Colne v. Smith, 188 App. Div. 834; Matter of Winchester, supra.) The prescribed mode of voting for “ Clair Bennett ’ ’, petitioner, for the office of supervisor, because his name did not appear on the voting machine as a nominated candidate, was to write his name — not an illegible scribble — in slot 2, the appropriate place on the machine to write in a vote for that office. (Election Law, § 259.)
Petitioner argues however that these 2 illegible votes are “wholly blank or void ballots ” within the meaning of these words as they are used in subdivision 4 of section 330 of the Election Law and that this court has power and authority in the present proceeding to receive oral testimony of electors to show their intention.
Whether an illegible ballot is to be counted under the statute is a question of law to be determined upon a review of the ballot and not upon extrinsic evidence. (People ex rel. Feeny v. Board of Canvassers, 156 N. Y. 36; Matter of Weinfeld, 203 App. Div. 778.)
Section 212 (rule 6) of the statute provides: “If the voter marks more names than.there are persons to be elected or nominated for an office, or elected to a party position, or if for any reason it is impossible to determine the voter’s choice of a candidate or candidates for an office or party position or his vote upon a question, his vote shall not be counted for such office or position or upon the question, but shall be returned as a blank vote thereon.” (Emphasis supplied.) Under this section the Board of Elections properly refused to count the 2 illegible votes for petitioner.
In People ex rel. Damon v. Fessenden (31 App. Div. 371 [4th Dept.]) the court discussed subdivision 2 of section 110 of the former Election Law (which is similar to rule 6 of the present § 212) and said at page 374: “It was not intended by subdivision 2, just quoted, to provide that, in case it is possible to determine the elector’s choice by means other than those prescribed by the statute, his ballot must be counted, but to provide that if impossible to ascertain his choice by the *811 marks prescribed by statute, the ballot should be regarded as a blank, which covers the case at bar ”.
It is conceded that the Supreme Court is not vested with any inherent power in election proceedings but has only such powers as are granted by the Election Law. (Matter of Tamney v. Atkins, 209 N. Y. 202.)
Section 330 (subd. 4) vests the Supreme Court with jurisdiction summarily to determine, among other things, any question of law or fact arising as to “ Protested, wholly blank or void ballots shown upon the statement of the canvass in any election district” (italics supplied) and “the court * * * may direct a recanvass or the correction of any error in the canvass ”.
In Matter of Hogan v. Supreme Court (281 N. Y. 572) the voting machine failed to register the true number of votes cast for a candidate named on the machine because of a defect in the mechanism. A proceeding was brought pursuant to subdivision 4 of section 330 of the Election Law to ascertain by oral testimony the number of votes cast but untabulated, on the ground that each time the defective machine failed to register a vote the result was a ballot ‘ ‘ wholly blank ’ ’. The Court of Appeals rejected that argument, holding that the proceeding did not come within subdivision 4 of section 330 and that the court therefore could not receive testimony of electors to establish the number of votes cast for a candidate whose name appeared on the defective machine. In emphasizing the narrow limit of the judicial power conferred by article 14 of the statute the court stated (p. 576): “ Any extension of the summary remedy authorized by that section must be made by the Legislature,”
So also, in the case at bar, petitioner has failed to establish that the illegible votes come within subdivision 4 of section 330 of the statute. Although he claims that the disputed votes are “ wholly blank ” or “ void ballots ” within the meaning of that provision, the Legislature has not so classified them. By rule 6 of section 212, a vote from which “ it is impossible to determine the voter's choice of a candidate ” is designated as a “blank vote”. If the Legislature had intended such a vote to be a “ wholly blank ” or “void ballot” it could have said so. The words “wholly blank”, “void” and “ballot” are used with distinction in other places throughout the Election Law, some of which even appear in other rules of section 212. In this circumstance it must be presumed that a difference between these words and phrases was intended. “ Under familiar principles of statutory construction, the use of different *812 words in the same statute implies a different legislative purpose.” (Catalanello v. Cudahy Packing Co., 27 N. Y. S. 2d 637, 641, affd. 264 App. Div. 723.)
Finally, the court has been unable to find any authority for receiving oral testimony when, because of the handwriting of the elector, it was impossible from his vote to determine his choice of candidates and no case has been called to his attention where the Supreme Court has received such testimony. (See Matter of Carson, 164 Misc. 945, affd. 254 App. Div. 801, and Matter of Lester v. Gruner, 205 Misc. 67, wherein it was held that the court could not take proof by affidavit or by oral examination of the voters in a summary proceeding pursuant to Election Law, § 330.) It appears to the court that if oral testimony of a voter cannot be received to show for whom he voted when, through no fault of his own, a defective machine fails to record his vote lawfully cast, certainly such testimony should not be received when, through his own fault, he fails to record his vote in accordance with the statutory provisions prescribing the mode in which it should be done.
This court has come to the conclusion that the Board of Elections properly refused to count the 2 illegible votes and that it does not have power or authority to take oral testimony in this proceeding to show for whom the votes were intended to be cast.
For the reasons set forth above the petition should he dismissed, without prejudice to the prosecution of such action or other proceeding by the petitioner as he may be advised.
Order accordingly.