In the Matter of JOHN A. O'SHAUGHNESSY, Respondent, *v.* MONROE COUNTY BOARD OF ELECTIONS et al., Appellants.

Fourth Department, December 22, 1961.

*Leo T. Minton, Monroe County Legal Adviser,* for Monroe County Board of Elections, appellant.

*Nixon, Hargrave, Devans & Dey (Albert L. Beswick* of counsel), for Harry M. Kerr, Jr., appellant.

*Erwin N. Witt* for respondent.

HALPERN, J. At the general election held on November 7, 1961, in the Town of Greece in Monroe County, the respondent

O'Shaughnessy was the candidate of the Democratic and Liberal parties for the office of Councilman in the Second Ward and the appellant Kerr was the Republican candidate for that office. Counting all the votes cast by machine as well as all the absentee and military ballots, the respondent was the winner by one vote. However, among the votes in favor of the respondent were two military ballots which are now in controversy.

The statements of canvass by the Election Inspectors, together with the absentee and military ballots, were forwarded to the Board of Elections. Subsequently, upon the recanvass of the voting machine votes and the absentee and military ballots, pursuant to section 274 of the Election Law, the Board of Elections determined that the two ballots in controversy were void and accordingly excluded them from the count of votes. This made the appellant the victor by one vote.

Thereafter, the respondent brought the present proceeding under section 330 of the Election Law to review the action of the Board of Elections. The Special Term held that the Board of Elections had the power only to correct an " omission or clerical mistake " in canvassing the election district returns under section 273 of the Election Law and that it had no power to examine the military ballots and " to alter the decision theretofore made " by the Election Inspectors who had held the ballots to be valid. No reference was made in the Special Term's opinion to section 274 of the Election Law, under which the Board of Elections had purported to act in recanvassing the vote and correcting the returns. The Special Term held further that the court had no power under subdivision 4 of section 330 of the Election Law to review the decision of the Election Inspectors since that subdivision permitted the court to review only " protested, wholly blank or void ballots shown upon the statement of the canvass in any election district or districts, or any protested or rejected absentee voters' ballots ", and the statements of canvass did not show any protested or void ballots.

The Special Term held, in effect, that the decision of the Election Inspectors was final for all practical purposes and that neither the Board of Elections nor the court had any power to review the validity of the ballots in question. The canvass of the ballots by the Election Inspectors on election night was therefore reinstated and the respondent once again became the winner of the election.

We have come to the conclusion that the Special Term was in error in its reasoning, although, as will be seen, we have decided to affirm the result reached by the Special Term on different grounds.

The Special Term's opinion correctly stated the law as it existed prior to the amendment of section 273-a (now § 274) of the Election Law in 1942 (L. 1942, ch. 827) but that amendment radically changed the situation.

Section 274 (formerly § 273-a) deals with elections conducted by the use of voting machines. As originally enacted by chapter 643 of the Laws of 1939, the section provided for an automatic recanvass of the vote shown by the voting machines, upon an examination of the machines by the Board of Elections. The 1942 amendment extended the automatic recanvass to include the absentee ballots. Under section 261 of the Election Law, all absentee ballots are to be placed in a single sealed package and filed with the Board of Elections with the original statement of canvass. The 1942 amendment directed the Board of Elections to " make a recanvass of the absentee voters' ballots " so filed and to prepare a statement showing the correct result found upon the examination of the absentee voters' ballots and of the voting machines. Section 274 provides that the " recanvass of votes made pursuant hereto shall thereupon supersede the returns filed by the inspectors of election ". The term " absentee ballots " in section 274 must be taken to include military ballots as well as other types of ballots cast on behalf of persons not present at the polls (cf. Election Law, §§ 304, 310).

There is also a reference in section 274 as amended in 1942 to the recanvass of irregular ballots. As irregular ballot is a write-in ballot for a person whose name does not appear upon the voting machine (Election Law, §§ 259, 266). The paper roll upon which the write-in votes may be written is also turned over to the Board of Elections with the statement of canvass and under section 274 the Board of Elections is authorized to reconvass these votes as well as the absentee ballots. This court recently passed upon a case in which the Board of Elections had reviewed the decision of the Election Inspectors with respect to write-in votes, under section 274, and had corrected the returns accordingly. The action of the Board of Elections was in turn reviewed by the courts under section 330 of the Election Law (*Matter of Bennett* v. *Talcott,* 10 Misc 2d 804, affd. 6 A D 2d 989, motion for leave to appeal denied 5 N Y 2d 708).

Under the law as it now stands, the decision by the Inspectors of Election as to the validity of absentee ballots is not final for any purpose. Their decision with respect to all absentee ballots is subject to review by the Board of Elections under section 274. The recanvass by the Board of Elections is in turn subject to summary review by the court under section 330 of the

Election Law. The court's summary jurisdiction may rest upon either subdivision 4 or subdivision 5 of section 330. Subdivision 4 of section 330 authorizes review by the court of " [p]rotested, wholly blank or void bollots shown upon the statement of the canvass ". Absentee ballots found to be void upon the recanvass by the Board of Elections may be treated as void ballots shown upon the statement of the canvass within the meaning of subdivision 4. As a matter of fact, the form of the original statement of canvass prescribed by the Secretary of State for the use of the Election Inspectors, pursuant to section 262 of the Election Law, does not provide any place for the notation of protested or void ballots. Under the current practice, the notation of void ballots appears for the first time on the statement of recanvass by the Board of Elections. The court's summary jurisdiction may also rest upon subdivision 5 of section 330 which authorizes a summary review of the canvass by the County Board of Canvassers. The Board of Elections of the county is the Board of Canvassers (Election Law, § 272). It is true that in the past subdivision 5 of section 330 has been held to authorize only the review of the canvass and not an examination of the underlying ballots but in view of the broadening of the power of the Board of Elections upon a recanvass under section 274, the power of the court to review the recanvass must be deemed to have been accordingly broadened (cf. *Matter of Bennett* v. *Talcott, supra*).*

It is argued that the amendment of section 274 only imposed upon the Board of Elections the ministerial duty of rechecking the count by the Election Inspectors and correcting " any omission or clerical mistake ", without inspecting and reviewing the absentee ballots, but this duty had already been imposed by section 273, governing the compilation of the original canvass from the Election Inspectors' returns. If narrowly construed in this way, the amendment to section 274 would be meaningless; it would add nothing to the already existing section 273. That the amendment had no such narrow purpose is evident from the memorandum submitted to the Governor by the Deputy Secretary of State in support of the bill which became chapter 827 of the Laws of 1942. After noting that under the existing law " the board of elections have no right nor power nor duty to open and inspect absentee voters' ballots nor alleged irregu-

---

* To avoid misunderstanding, it should be noted that the court has much broader summary powers with respect to a primary election, under subdivision 2 of section 330 of the Election Law, than it has with respect to a general election (*Matter of Holley* [*Rittenberg*], 268 N. Y. 484; *Matter of McCann* v. *Power*, 306 N. Y. 578; *Matter of Hughes* v. *Harrer*, 4 A D 2d 888).

lar ballots ", the Deputy Secretary of State continued: " This bill will correct that state of affairs and is therefore desirable since it will make possible a complete recanvass of the vote cast in an election district." (See Governor's Bill Jacket.)

This construction of the 1942 amendment to section 274 is further supported by the action of the Legislature in 1946 (L. 1946, ch. 871), when it repealed section 266 of the Election Law of 1922, as amended by chapter 78 of the Laws of 1940. Section 266 had authorized the County Board of Canvassers [i.e., the Board of Elections] to recanvass the votes in the event that there appeared to be " a discrepancy in the returns of any election district " but the section had provided that " nothing contained in this section shall authorize any change in the returns filed by inspectors of election in any election district ". This was in conflict with section 274, which directed the Board of Elections to make a recanvass in all cases, without regard to the existence of an apparent discrepancy, and which further provided that the recanvass " shall thereupon supersede the returns filed by the inspectors of election ". The limitations contained in section 266 were really overridden by the adoption of section 274. In 1946, the Legislature clarified the situation by repealing section 266, thus leaving section 274 as the only section governing recanvasses by the Board of Elections.

The construction of section 274 here adopted is in accord with the practice of Boards of Election throughout the State, so far as we have been able to ascertain it. We are informed that Boards of Election routinely undertake a re-examination of absentee ballots under section 274 whenever there is a close contest. The view here adopted entrusts the solution of disputes as to the validity of absentee ballots to skilled and experienced public officers, subject to summary judicial reveiw, and thus serves the public interest by facilitating the fair and prompt disposition of such disputes.

There is an obiter dictum in *Matter of Mahoney* (*Lyons*) (267 App. Div. 478) which suggests that the power of recanvass under section 274 (then § 273-a) is limited to votes counted as valid by the Inspectors of Election and does not extend to votes which they marked " protested " and did not count. We can see no good reason for this limitation but, in any event, we are here concerned with votes which were counted as valid by the Election Inspectors. In the briefs in the Court of Appeals in the *Mahoney* case, there was no reference to the point touched upon in the Appellate Division's dictum. The only question argued before, and submitted to, the Court of Appeals was whether the ballot in controversy was in fact valid. The Court

of Appeals affirmed without opinion the holding that it was valid (292 N. Y. 710).

The raising of an objection to the validity of a ballot at the time of the original canvass on Election Day is not essential in order to allow the Board of Elections to hold the ballot to be void upon the recanvass under section 274. A ballot which is not properly marked in accordance with the statute (§ 212) must be treated as void either *in toto* or with respect to a particular office, as the case may be, whether anyone objected to it or not at the time of the original canvass (Election Law, § 213).

The duty to refuse to count a void ballot rests in the first instance upon the Election Inspectors but if they fail to perform their duty, the Board of Elections may correct the result upon the recanvass under section 274.

In this respect, a sharp distinction must be drawn between holding a ballot to be void in whole or in part because of improper or defective marking and holding that the ballot (no matter how marked) may not properly be cast because the purported absentee voter was not a qualified voter or because he was not entitled to cast his vote by means of an absentee ballot. Objections of the latter character must be raised on Election Day at the time when the envelope containing the absentee ballot is about to be opened and the ballot cast (Election Law, § 204, and see § 309, as to military ballots). If no protest is made at that time, any question as to the right of the absentee voter to cast the absentee ballot is waived. The ballot, once it is withdrawn from the envelope, is to be placed in the ballot box without unfolding (Election Law, § 204, subd. 1) and commingled with the other ballots. It is too late to raise any question as to the qualifications of the voter after this has been done; there is no way to identify the ballot which had been cast on behalf of any particular absentee voter. This is also true with respect to any question which may be raised as to the sufficiency of the application upon the basis of which the absentee ballot had been issued. The Board of Inspectors is not under any statutory duty to question the right of any absentee voter to cast his ballot by means of an absentee ballot, unless an objection or protest is made either by one of the members of the board upon the basis of his personal knowledge or by some other person (§ 204). If no objection is raised, the absentee ballot envelope of any person whose name appears on the register and who has not voted in person, must be opened and the ballot must be deposited in the ballot box. The phrase " protested or rejected absentee voters' ballots " in subdivision 4 of section 330 of the Election Law refers to ballots to which objections of the type

discussed above were raised under sections 204 or 309 of the Election Law.

The rules governing the determination of the validity of a ballot on its face, after it has been accepted as an absentee voter's ballot and deposited in the ballot box, are wholly different. The examination of the ballots takes place after the close of the polls when the ballots are removed from the ballot box for counting. As has been pointed out above, the Election Inspectors are under a statutory duty to treat any ballot as void, in whole or in part, if it is improperly marked, whether or not an objection or protest has been made by anyone (Election Law, § 213). Similarly, upon the recanvass of the absentee ballots pursuant to section 274 of the Election Law, the Board of Elections must determine the validity of the ballots, whether protested or not, and finally, upon the court's review of the recanvass, the court must finally determine the validity of the ballots (Election Law, § 330).

Under the statutory scheme, the making of a timely protest is thus essential to the raising of any question under section 204 or 309 as to the qualifications of the voter or his right to vote by means of an absentee ballot. It is not essential to the exclusion of a ballot after it has been cast, during the process of canvassing or recanvassing the ballots, on the ground that it is void under sections 212 and 213 because it is defectively or improperly marked.

The cases holding that an absentee voter's ballot which was not protested on Election Day cannot subsequently be rejected (e.g., *Matter of Commerdinger*, 246 App. Div. 834, affd. 270 N. Y. 657; *Matter of Mullen,* 298 N. Y. 785, and *Matter of Cosgrove [Walsh]*, 292 N. Y. 115) refer only to objections of the type first mentioned, i.e., objections under section 204 or 309. They have no bearing upon the right of the Inspectors of Election and of the Board of Elections to hold the ballot to be void for defective or improper marking under sections 212 and 213.

It is therefore our conclusion that the Board of Elections acted within the scope of its powers under section 274 of the Election Law in re-examining the absentee ballots in this case and in making corrections in the statement of canvass by the Election Inspectors. However, upon our review of the action of the Board of Elections, we find that the determination made by the board with respect to the two ballots in controversy was erroneous and that the action of the Election Inspectors in counting the ballots as valid was correct.

One of the ballots has an erasure in the space provided for a vote for one of the candidates for Justice of the Supreme Court.

The vote for the office of Councilman is completely correct and contains no improper marks of any kind. The erasure had the effect only of invalidating the vote for the office of Justice of the Supreme Court. It did not invalidate the vote for Councilman, there being no showing that the erasure had been intended as an identifying mark upon the ballot (Election Law, § 212, rule 1).

The other military ballot in controversy has an " X " mark in the proper voting square for the office of Councilman but also has a small " X " mark alongside the voting square. The next adjoining space for the office of Receiver of Taxes and Assessments contains similar marks. The ballot had been marked in ink and we agree with the statement made by the Special Term by way of obiter dictum that the additional mark outside the voting square was a blot caused by the blotting of the ink when the ballot was folded along a vertical line. When the ballot is so folded and held up to a strong light, the " X " mark in the voting square for the office of Councilman covers the blot mark alongside the square for the office of Receiver for Taxes and Assessments and the " X " mark in the voting square for that office covers precisely the blot mark alongside the voting square for the office of Councilman. Other blot marks upon the ballot are accounted for by the fact that the ballot had been apparently unfolded after it had been first folded on the vertical crease and then has been folded along a horizontal line. As the Special Term said: " Marks made ' unintentionally ', through ' inadvertence ', or ' accidentally ', as distinguished from those intentionally made, do not invalidate the ballot. (*People ex rel. Karns* v. *Porter,* 176 App. Div. 330, 338; In re *Cosgrove,* 46 N. Y. S. 2d 181, 193, modified on other grounds 292 N. Y. 111; *Matter of Garvin,* 168 App. Div. 218, 221; *Matter of Moritt* v. *Cohen,* et al., 255 App. Div. 804, 805, affd. 279 N. Y. 617; *People ex rel. Brown* v. *Board of Supervisors of Suffolk County,* 170 App. Div. 364, 372, modified on other grounds 216 N. Y. 732.) "

We therefore hold, on the merits, that both ballots are valid and that they were properly counted in favor of the respondent.

The order insofar as appealed from should therefore be affirmed.

All concur. Present — WILLIAMS, P. J., GOLDMAN, HALPERN, McCLUSKY and HENRY, JJ.

Order insofar as appealed from unanimously affirmed, without costs of these appeals to any party. Motions for a stay dismissed, without costs as academic. Motion to dismiss appeal denied, without costs.