■ In the Matter of NELSON WILLIAMS, JR., Respondent, v RENSSELAER COUNTY BOARD OF ELECTIONS et al., Respondents, and THOMAS M. MONAHAN, JR., as Commissioner of Elections, et al., Appellants. (Proceeding No. 1.) In the Matter of ARTHUR QUINN, Appellant, v HENRY TUTUNJIAN et al., Constituting the Rensselaer County Board of Elections, et al., Respondents. (Proceeding No. 2.) — Appeal in proceeding No. 1 from a judgment of the Supreme Court at Special Term (Hughes, J.), entered December 5, 1983 in Rensselaer County, which granted petitioner's application, in a proceeding pursuant to sections 16-106 and 16-108 of the Election Law, insofar as it sought an order that two emergency ballots should be opened, and dismissed a cross petition. Appeal in proceeding No. 2 from a judgment of the Supreme Court at Special Term (Cholakis, J.), entered December 12, 1983 in Rensselaer County, which dismissed petitioner's application, in a proceeding pursuant to section 16-106 of the Election Law, to invalidate an emergency ballot. Arthur Quinn, a Democrat, and Nelson Williams, Jr., a Republican, were two of four candidates for two positions of councilman in the Town of East Greenbush, Rensselaer County, at the November, 1983 general election. A voter could select two candidates. These proceedings involve two emergency ballots cast in the election. In each instance, the voter was not allowed to vote by machine

because the records at the local polling place did not show the voter to be properly registered. The first ballot contains a vote for Williams. The second ballot contains what purports to be a vote for all of the Republican candidates for office, including Williams. The Rensselaer County Board of Elections ruled that both ballots were properly cast and counted one vote for Williams on each of the ballots. Williams commenced proceeding No. 1 seeking an order that both ballots were properly counted. Quinn and Thomas Monahan, a member of the board of elections, filed what purports to be a cross petition seeking an order declaring that an absentee ballot containing a vote for Williams also contains a vote for Quinn and directing that two other ballots be opened. Special Term ruled that both emergency ballots were properly opened and dismissed the cross petition as untimely. Quinn and Monahan appealed such judgment. Proceeding No. 2 was commenced by Quinn seeking to invalidate the second emergency ballot. Special Term dismissed the application and Quinn appealed. The situation prevailing after the two judgments of Special Term is that Williams is one vote ahead of Quinn in the election. Dealing first with proceeding No. 1, we find that the voter who cast the first ballot had not moved her voting residence prior to the November, 1983 election and, accordingly, was properly registered to vote (see *Matter of Ferguson v McNab,* 60 NY2d 598; *Matter of Bressler v Holt-Harris,* 37 AD2d 898, affd 30 NY2d 529). The voter in question, Laura J. Sinnott, was registered at a residence which was her parents' home, 3 Jerold Drive in the Town of East Greenbush. Although Sinnott testified that she was married in September, 1983 and entered into a month-to-month rental of an apartment on Columbia Turnpike in the Town of East Greenbush, Sinnott stated that due to her honeymoon, several out-of-town trips, employment demands and renovations on the apartment, she had not completed the process of moving into the apartment as of the November, 1983 election. Moreover, she categorically testified that during the period in question, she spent time at 3 Jerold Drive and considered that her legal residence. Indeed, she explained that most of her furniture and much of her clothing were at 3 Jerold Drive during the period at issue. It is also undisputed that the address on Sinnott's driver's license, credit cards and other legal papers retained 3 Jerold Drive as her official address and residence. With regard to the second emergency ballot, we reach the same conclusion. The evidence clearly indicates that the man who cast this ballot, Clifford W. Cotten, did not move and has lived at the same place for over 30 years. For reasons unexplained, the postcard sent by the board of elections prior to the election to confirm that Cotten was still residing at the place at which he was registered was returned by the post office with a notation that he had moved. It is for this reason that Cotten's registration was apparently canceled. The proof offered to show that Cotten had moved is minimal at best. It is clear that his registration should not have been canceled and Special Term properly ruled that his ballot should be opened. Turning to the cross petition, statute provides that a proceeding must be commenced within 20 days after the election or the alleged erroneous determination (Election Law, § 16-106, subd 5). Here, the election was held on November 8 and the determinations challenged in the cross petition were made that night. Such determinations were never amended or modified. Thus, a proceeding to challenge these determinations had to be commenced by November 18. Since the cross petition was not served until November 29, it was not timely commenced. The cross petition was not entitled to the benefit of the relation back provision of CPLR 203 (subd [c]) since it is manifestly not a counterclaim, and a cross claim is not permitted in a special proceeding without court order (3 Weinstein-Korn-Miller, NY Civ Prac, par 3019.16). Accordingly, the judgment in proceeding No. 1 must be affirmed. The issue in proceeding No. 2 is whether a purported vote for Williams on the

second emergency paper ballot cast by Cotten should be counted. Initially, we hold that service of the petition, which complied with the order to show cause which commenced the proceeding, was proper. Quinn raises two challenges to Cotten's purported vote for Williams. First, he argues that the ballot used does not conform to the statutory description of a paper ballot. The Election Law provides a description for a "paper" ballot (Election Law, § 7-106) and an "absentee" ballot (Election Law, § 7-122). Both require that the box for a candidate contain, *inter alia,* the name of the candidate and a voting square, but they differ as to the relative positioning of these two items.* Here, an absentee ballot was used, which ballot clearly complied with section 7-122 of the Election Law. Quinn's argument is that a paper ballot complying with section 7-106 of the Election Law should have been used. This argument is without merit. Section 8-302 (subd 3, par [f], cl 2) of the Election Law provides that where, as here, a registration poll record cannot be found for a voter, such voter shall vote by means of an "emergency" ballot. Emergency ballots may be of "any suitable form" or "as nearly in the form of the official ballots as practicable", depending on the purpose of such ballot (Election Law, § 7-120, subds 1, 2). The absentee ballot used herein clearly fits within the description of an emergency ballot. Quinn's other challenge concerns the manner in which the vote was cast for Williams on Cotten's emergency ballot. As stated above, the box for each candidate contains a voting square. To vote for a candidate, the voter must place a cross "X" or a check "✓" in the voting square, and clear instructions to this effect are printed at the top of the ballot (Election Law, §§ 7-106, 9-112). On the ballot in question, Cotten placed a check "✓" in the box containing the name of Williams. The mark was not within the voting square, but it did touch the upper left corner of such square. Special Term ruled that the vote was valid, holding that exact mechanical precision in the marking of ballots is not required. Special Term also considered the facts that Cotten was elderly and had failing eyesight, and that it was for a reason beyond his control that he was forced to vote by emergency ballot instead of by machine. The importance of order and precision in the voting process requires that many of the provisions of the Election Law be strictly interpreted so as to prevent the electoral process from being abused. This is particularly true of the recording of votes, the heart of the electoral process. In our view, the recording of votes must be based on the objective criteria of the statute without regard to the circumstances of any one case. Thus, the validity of the vote involved herein must be determined by application of statutory provisions and cannot turn on factors relied upon by respondents such as this particular voter's apparent intent to vote a straight Republican ticket and his failing eyesight. We note with regard to this latter factor that the record is devoid of any evidence that Cotten complained at the polling place that he could not read the ballot or that he requested assistance from the election inspectors in completing the ballot. It is clear from the statute that the only place on a paper or absentee ballot where a vote may properly be recorded is in a voting square and that the only proper means of indicating a vote is by a "X" or a "✓" (Election Law, § 9-112, subds 1, 2). Thus, in order to determine whether a vote was properly cast, only the voting square may be examined. If a "X" or "✓" is within the voting square, the vote is proper. Here, Cotten marked a "✓" but the mark is not within the voting square, though it does touch the line which forms the boundary of the square. Even assuming that the line is part of the square, the fact that the mark may touch the square is not dispositive since there is not a "X" or "✓" within the voting square. Therefore, the vote cannot be counted. We note that this does

---

* On a paper ballot, the voting square must be to the left of the candidate's name (Election Law, § 7-106). On an absentee ballot, the voting square must be above the candidate's name (Election Law, § 7-122).

not render the entire ballot invalid, but renders it blank only as to the office of councilman (Election Law, § 9-112). The judgment in proceeding No. 2 must therefore be modified to the extent of invalidating the vote credited for Williams which resulted from the counting of Cotten's emergency ballot. The effect of our decision in these appeals is to create a tie between candidates Williams and Quinn which will have to be resolved in accordance with existing statutory provisions (see Town Law, § 64, subd 5). Judgment in proceeding No. 1 affirmed, without costs. Judgment in proceeding No. 2 modified, on the law and the facts, without costs, by reversing so much thereof as dismissed the petition insofar as it sought to invalidate the ballot of Clifford W. Cotten for the office of councilman for the Town of East Greenbush, Rensselaer County; petition granted to the extent that said ballot is rendered blank as to that office; and, as so modified, affirmed. Sweeney and Levine, JJ., concur; Mahoney, P. J., and Weiss, J., concur in part and dissent in part in a memorandum by Mahoney, P. J.; Kane, J. concurs in part and dissents in part in a separate memorandum.

Mahoney, P. J. (concurring in part and dissenting in part). While we agree with the majority's conclusion in proceeding No. 2, we cannot agree with that portion of the decision in proceeding No. 1 which holds that the ballot of Laura J. Sinnott was properly counted. The requirement that a voter be registered in order to vote (Election Law, § 5-100) is independent of the qualification requirement (Election Law, § 5-102). A voter's registration is canceled if, "since the time of his last registration, he * * * [m]oved his residence and did not transfer his registration" (Election Law, § 5-400, subd 2). The term "residence" means "that place where a person maintains a fixed, permanent and principal home and to which he, wherever temporarily located, always intends to return" (Election Law, § 1-104, subd 22). In our view, the evidence in the record indicates that Sinnott did indeed move and, since she did not reregister or transfer her registration, her registration was canceled. It is incongruous that a young woman would marry, rent an apartment with her spouse, move some of her belongings to the apartment and actually stay there with her husband, and still claim that she resides at her parents' residence or that she is unsure of whether she will move to her new apartment. This is unlike the cases relied on by the majority (*Matter of Ferguson v McNab,* 60 NY2d 598; *Matter of Bressler v Holt-Harris,* 37 AD2d 898, affd 30 NY2d 529) where the individuals involved clearly had two residences, one of which they designated for voting purposes. Therefore, in our view, the Sinnott ballot should not be counted.

Kane, J. (concurring in part and dissenting in part). Although I agree with the majority's decision in proceeding No. 1, I disagree with their conclusion in proceeding No. 2 and would affirm that judgment. It is my view that the marking on the emergency ballot by Clifford W. Cotten should be accepted as a vote for respondent Nelson Williams, Jr. Concededly, the marking crossed the corner of the box, indicating a vote for Williams, and Cotten's affidavit submitted in this proceeding conclusively established his intent to cast such a vote. Moreover, an examination of the actual ballot fully corroborates his expressed intent. Admittedly, it is unusual to have available the identity of any voter using a paper ballot, but once that identity is known, there is no reason to exclude an expression of intent evidenced by a sworn statement in a formal proceeding when that vote is critical to the outcome of an election. A similar procedure received judicial approval following a dispute concerning the outcome of a primary election (*Matter of Farano v Monahan,* 79 Misc 2d 648, affd 46 AD2d 695, affd 35 NY2d 729). Accordingly, such approval must be forthcoming in the case of a general election.