OPINION OF THE COURT
Loren N. Brown, J.
This proceeding has its antecedents in a general election *1007 held on November 7, 1989. Petitioner Mark R. Minick ran for the post of Superintendent of Highways for the Town of Stillwater on the Republican line. Respondent Arthur Patterson ran for the same office on the Democratic and Minuteman Party lines. By the time voting had ceased on November 7th, eight emergency ballots had been completed and submitted to the county’s Board of Elections. The votes were canvassed by the Board on November 17, 1989. Of the 8 emergency ballots, and over the petitioner’s objections, 3 ballots were counted — 2 ballots from Stillwater District No. 3 and 1 ballot from District No. 7.[1] One of the three counted ballots was purportedly cast by one Gloria Miller, who, though allegedly living in Stillwater Election District No. 1, resided and voted in District No. 7.[2] Five emergency ballots were not opened and were treated by the Board as void, including 1 cast by John F. Crammond, Jr. and 1 cast by Michael Minick, the petitioner’s brother. Crammond’s ballot envelope was not opened because of a discrepancy between the address placed by him on the envelope and his address as shown in the records kept by the Board of Elections. Michael Minick’s ballot was not counted because he was purportedly not registered to vote, and because of an apparent address discrepancy. Following the canvassing, and with the three disputed votes counted, the result was a tie — 1,431 votes cast for each candidate.
The court now has been petitioned pursuant to section 16-106 of the Election Law for an order directing respondent Board of Elections to preserve intact all emergency ballots, affidavits and the envelopes in which such ballots and affidavits were contained, requiring the respondents to permit the examination and reproduction of the ballots and other materials, directing that the three emergency ballots be voided, directing the opening of envelopes containing the emergency ballots of Michael Minick and John Crammond, Jr., and requiring the Board of Elections to reconvene and recanvass the votes cast.
Initially, the court finds the Board’s refusal to permit the petitioner access to the envelopes, affidavits and ballots to be justified. Those who have cast their ballot with the expecta *1008 tian of absolute secrecy should not be later identified so that their vote may be subjected to examination by the candidates.
The court has been furnished with the three opened ballots. Two of the ballots are sample ballots (Election Law § 7-118) used to explain the use of a voting machine, and faithfully reflect what a voter would see behind the voting machine curtain. Each candidate appears in a square with the symbol of his or her party in the upper left-hand corner of the square, and a depiction of a voting lever. In both cases, the voter circled the name of his or her choice. The third ballot is an absentee voter’s ballot. The sample ballots and absentee voter’s ballot are the same, except for the accompanying instructions, and a voting box on the absentee ballot which replaces the depiction of the voting lever. The voting box on the absentee voter’s ballot is checked for the voter’s choice of candidates.
The Election Law specifies how a voter may designate his or her candidate of choice when a paper ballot is used. Section 9-112 of the Election Law provides: "1. The whole ballot is void if the voter (a) does any act extrinsic to the ballot such as enclosing any paper or other article in the folded ballot or (b) defaces or tears the ballot * * * (c) makes any erasure thereon or (d) makes any mark thereon other than a cross X mark or a check / mark in a voting square”. The circles made by the two voters on the sample ballots were not the marks permitted by the statute and may not be counted. The absentee voter ballot was properly marked and may be counted. The fact that the sample ballots were also emergency ballots does not require a less stringent standard. Emergency ballots must be in a suitable form. (Election Law § 7-120.) To have a suitable form the emergency ballot would have to contain a voting square in close proximity to the candidate’s name. (Matter of Williams v Rensselaer County Bd. of Elections, 98 AD2d 938, affd sub nom. Matter of Quinn v Tutunjian, 61 NY2d 730, appeal dismissed 61 NY2d 737, lv denied 61 NY2d 606.) Only then could a vote be effectively cast by making the appropriate mark.
The court is aware that the result reached, which disenfranchises two voters who have clearly stated a preference, appears to be highly, perhaps overly, technical. However, the need to strictly comply with technical voting procedures, thus limiting abuse of the election process, was affirmed by both the Appellate Division, Third Department, and the Court of Appeals in Williams (supra).
*1009 UNOPENED BALLOTS
Also at issue are the ballots of Crammond and Minick. Regarding Crammond, his ballot was properly set aside. Crammond’s address as stated on the ballot envelope is substantially different from that on his voter registration card. There is no evidence that human or clerical error resulted in the discrepancy. (Matter of Giglia v Carlsen, 55 AD2d 1018.) The court finds no merit to the petitioner’s contention that in order to set aside the ballot, the Board of Elections was required to give the voter prior notice and an opportunity to be heard. The Board did not cancel Crammond’s registration, an act which would require notice and an opportunity to be heard. (Election Law § 5-402.) It merely recognized a substantial irregularity, and properly set the envelope and ballot aside.
Addressing the Minick ballot, though there is some question, it appears that it was rejected because the envelope in which the ballot was placed contained his address as County Road No. 76, Stillwater, New York, while the Board’s records showed his address as County Road No. 67. Also, the Board’s records reflect that he was not a registered voter for the general election of 1989.
Regarding the first objection, oral arguments on the return date of the motion reflect that the discrepancy in the route number was not, in fact, a basis for rejection of the ballot. In any case, because there is no Saratoga County Route No. 67, and the court will take judicial notice of that fact, the error must have been merely an erroneous juxtaposition of numbers. Unlike the sample ballots (supra), the voting material contained no defect. The envelope contained the correct address. The mistake, perhaps committed by the Board itself, was not connected with the vote itself and should not result in the disenfranchisement of a voter.
Regarding the purported lack of registration, Michael Minick, without dispute, voted in the general election of 1985. Because four years, as properly computed, had not elapsed since he last voted, his registration should have remained active. (Election Law §§ 5-400, 5-406.) Any loss or destruction of his registration card, as apparently happened here, would not affect his status as a registered voter. His ballot envelope should be opened and examined upon a recanvass, and, if in proper form, counted.
Finally, two tangential issues must be addressed. Respon *1010 dent Patterson objects to the use of petitioner’s affidavits made upon information and belief. The simple answer is that the secrecy of the voting process justifies such affidavits. Respondent Patterson also claims that he can point to flaws in the election process, such as voters who illegally voted, which, in conjunction with the irregularities claimed by the petitioner, would justify a special election. There is no allegation, however, that timely objections were made to these allegedly illegal votes. (Matter of O’Shaughnessy v Monroe County Bd. of Elections, 15 AD2d 183; Matter of Gates v Scaringe, 105 AD2d 543; Matter of Decker v Jutkofsky, 77 AD2d 733.) Those ballots must be deemed to have been properly cast and counted.
In summary, the respondent Board properly refused to disclose election materials to the petitioner. The two opened ballots with circles around the voters’ choices are invalid. The absentee ballot is valid. The envelope containing the Crammond ballot shall remain sealed and the ballot uncounted. The Minick envelope shall be opened, and, if the ballot was properly completed, his vote shall be counted. Respondents Scranton and DelVecchio shall, as Commissioners of the Sara-toga County Board of Elections, reconvene and recanvass the votes cast for the Office of Town Highway Superintendent of the Town of Stillwater; such recanvass to reflect the result of this proceeding.

. The Board of Elections has refused to permit the petitioner access to the ballots, accompanying voter affidavits and envelopes.

. Arguments on the return date of the order to show cause commencing this proceeding reflect that any discrepancy in Gloria Miller’s voting records was caused by a record-keeping error by the Board of Elections. That issue need not be addressed further.